IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEVEN RAY GALLEGOS,

    Plaintiff,

v.                                                                                                                      CV 15-148 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Steven Ray Gallegos applied for disability insurance benefits and supplemental security income on July 29, 2011, based on diabetes, high blood pressure, neuropathy, shoulder pain, numbness in the feet, and kidney problems. (Administrative Record "AR" 94, 118, 219.) After his applications were denied at all administrative levels, Gallegos filed his Motion to Reverse and Remand for a Rehearing. (Doc. 20.) The Commissioner of the Social Security Administration ("SSA") filed a response (Doc. 26) and Gallegos filed a reply (Doc. 29). For the reasons explained below, I grant Gallegos's motion to remand and remand this case to the SSA for proceedings consistent with this opinion.

### STANDARD OF REVIEW

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that []he has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step

and, in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to see if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Gallegos is a forty-six-year-old man with a tenth-grade education and additional training as a heavy equipment operator. (AR 94, 254-55.) Gallegos previously worked as a bundler at a mill, a construction worker, a janitor, a security guard, and a stocker at a retail store. (AR 255.) Gallegos claims disability beginning on March 1, 2010, based on diabetes, high blood pressure, neuropathy, shoulder pain, feet numbness, and kidney problems. (AR 94, 118.)

I do not address everything in the record, but rather target my factual discussion to the facts necessary to the disposition of this case.

Melanie Ukanwa, M.D., is Gallegos's primary care provider. Gallegos treated with Dr. Ukanwa beginning at the latest in July 2010 (*see* AR 344) through at least April 2013 (*see* AR 464). None of Dr. Ukanwa's notes indicate that Gallegos complained of mental or emotional symptoms. On July 7, 2011, Dr. Ukanwa wrote a note requesting home care assistance for

Gallegos for at least six hours a day, five days a week, because he had difficulty remembering to take his medications and difficulty ambulating due to diabetic neuropathy in his feet. (AR 446.) On October 31, 2011, Gallegos was admitted to Cibola General Hospital due to diabetes-related complications. (AR 362.) Dr. Ukanwa wrote that it was hard to control Gallegos's diabetes while he was in the hospital because his family members kept "bringing him completely inappropriate foods given his diabetic condition" and repeatedly ignored her admonitions on the importance of diet. (AR 365.)

In a function report dated March 12, 2012, Gallegos reported that he sometimes needs a reminder to take medications. (AR 304.)

Gallegos saw consultative examiner David LaCourt, Ph.D., on April 24, 2012. (AR 426.) Dr. LaCourt found that Gallegos had attention in the low-normal range with a low-normal level of concentration. (AR 425.) Gallegos was cooperative, with normal eye contact, appropriate affect, and dysphoric mood. (*Id.*) Gallegos reported that he had never been prescribed antidepressants and had not been involved in therapy or counseling. On the Wechsler Adult Intelligence Scale Fourth Edition, Gallegos scored a full-scale IQ of 72, with all scores in the borderline-to-below-average range, and the full-scale IQ providing "the best estimate of [his] general intellectual functioning." (AR 427.) Dr. LaCourt diagnosed Gallegos with an unspecified depressive disorder and borderline intellectual functioning. (*Id.*) Dr. LaCourt further noted that Gallegos experienced mild limitations with attention and concentration, social interaction with the public, adaptation to changes in the workplaces, and being aware of responding appropriately to normal hazards; moderate limitations understanding and remembering detailed or complex instructions, sustaining concentration or task persistence for carrying out instructions, working without supervision, social interaction with coworkers or supervisors due to a lack of task

persistence, and use of public transportation; and no limitations with very short or simple instructions. (AR 427-28.)

On May 24, 2012, Elizabeth Chiang, M.D., a non-examining reviewer for the state agency, conducted a Psychiatric Review Technique and Mental RFC of Gallegos based on his medical records and Dr. LaCourt's opinion. (AR 99-103.) Dr. Chiang found that Gallegos experienced mild restrictions on activities of daily living, mild difficulties with social functioning, and moderate difficulties maintaining concentration, persistence and pace. (AR 100.) She noted that Gallegos reported problems with memory, completing tasks, and concentration; that she found these reports credible; and that these limitations did not preclude Gallegos from working. (*Id.*) Dr. Chiang determined that Gallegos had moderate limitations in his ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest period, and set realistic goals or make plans independently of others. (AR 102-03.) Dr. Chiang did not find any other significant limitations.

On March 6, 2013, Gallegos saw Paula Hughson, M.D., for a consultative psychiatric examination. (AR 436.) Dr. Hughson reviewed Dr. LaCourt's opinion, but did not have access to Gallegos's other records. Gallegos arrived twenty minutes late and was somewhat disheveled. She noted that Gallegos exhibited "[l]imited coopration, [was] able to give only limited information, yawn[ed] frequently, [and paid] only cursory attention to the task at hand." (*Id.*) Gallegos's chief complaints were diabetes and that his feet hurt. Gallegos did not report any emotional or behavioral problems. (AR 437.) Dr. Hughson noted that Gallegos probably has borderline intelligence, exhibited a limited fund of information, and had fair insight and

5

judgment. (AR 438.) She assessed Gallegos with a somatoform disorder, borderline intellectual functioning, coping with poorly controlled diabetes, fatigue, neuropathy, and an inability to work, with a GAF of 48.[1] Dr. Hughson found that Gallegos experienced marked limitations in his ability to understand and remember detailed or complex instructions and his ability to carry out instructions; moderate-to-marked limitations in his ability to attend and concentrate or to work without supervision; moderate limitations in his ability to understand and remember very short and simple instructions, interact with the public, adapt to changes in the workplace, and use public transportation or travel to unfamiliar places; and mild limitations in his ability to interact with coworkers or supervisors and be aware of normal hazards. (AR 438-40.)

## THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued his decision on June 23, 2014. (AR 26.) As an initial matter, the ALJ found that Gallegos's date last insured, for the purposes of disability insurance benefits, was September 30, 2010, such that Gallegos must establish a disability beginning on or before that date to be entitled to disability insurance benefits. (AR 31.) At step one, the ALJ determined that Gallegos has not engaged in substantial gainful activity since his application date. (*Id.*) At step two, the ALJ found that Gallegos has the severe impairments of diabetes mellitus with neuropathy, a right shoulder disorder, borderline intellectual functioning, obesity, somatoform disorder, venous insufficiency, and hypertension. (*Id.*) The ALJ concluded that Gallegos does not have an impairment or combination of impairments that meet or medically equal anything on the

---

[1] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). A score between forty-one and fifty is assessed when the patient is believed to have "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." *Id.* A score between fifty-one and sixty is assessed when the patient is believed to have "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, Gallegos's mental health providers used this scoring method.

Listing of Impairments. (AR 31-32.) The ALJ specifically considered Listings 12.04 and 12.07, and noted that Gallegos experiences mild restrictions in activities of daily living, mild difficulties with social functioning, and moderate difficulties with regard to concentration, persistence or pace, but experienced no episodes of decompensation. (AR 32-33.)

At phase one of step four, the ALJ determined that Gallegos has the RFC for sedentary work, except that he can only occasionally climb ladders, ropes, or scaffolds; is limited to occasional overhead reaching on the right side; should avoid concentrated exposure to extreme temperatures or chemicals; and should avoid control of moving machinery, hazardous machinery, and unprotected heights. (AR 33.) Gallegos also experiences some mental limitations. The ALJ determined that Gallegos can understand, carry out, and remember simple instructions and make commensurate work-related decisions; can respond appropriately to supervision, coworkers and work situations; can deal with routine change in work settings; and can maintain concentration, persistence or pace for up to and including two hours at a time, with normal breaks throughout the workday. (*Id.*)

The ALJ determined that Gallegos's impairments could be expected to cause his symptoms, but that his complaints were not entirely credible. (AR 34.) The ALJ noted that Gallegos's driver's license was revoked due to multiple DWI convictions, but he told Dr. Hammons that he does not drive because he is afraid. (*Id.*) At the hearing, Gallegos said that he does not drive, but then conceded that he was arrested three months before the hearing for driving with a revoked license. (*Id.*) With respect to that arrest, Gallegos said that he was driving to his uncle's house to get tools and do some home repairs, but also says that he can barely lift a cup of water off a table and that he has to hold onto a wall because of balance issues. (*Id.*)

Additionally, the ALJ noted that Gallegos's reports of dizziness are not supported by the record. (*Id.*)

With regard to Gallegos's diabetes diagnosis, the ALJ noted that Gallegos failed to follow his prescribed diet or take medications prescribed by his primary care provider, Dr. Ukanwa, despite the fact that his diabetic care is paid for by Medicaid. (AR 35.) There is some evidence that Gallegos suffers from hypertension, but only when he is not compliant with his medications. (*Id.*) The ALJ stated that "[t]he record documents a failure to comply with prescribed treatment, despite having a paid caretaker to monitor his condition. [Gallegos's] failure to comply with prescribed treatment demonstrates a possible unwillingness to do what is necessary to improve his condition." (AR 36-37.)

The ALJ reviewed the medical evidence of record. With regard to his psychological conditions, the ALJ noted that Gallegos reported worsening anxiety at the hearing, but had received no mental health treatment and had not mentioned any mental or emotional problems to Dr. Ukanwa. (AR 38.)

The ALJ specifically discussed Dr. Hughson's opinion, based on her March 6, 2013, consultative psychiatric examination of Gallegos. (*Id.*) Dr. Hughson noted that Gallegos arrived twenty minutes late, accompanied by his daughter, and was slightly disheveled. (AR 38-39.) Gallegos yawned frequently, provided only limited cooperation, and paid only cursory attention to the task at hand. (AR 39.) Gallegos did not mention emotional or behavioral problems to Dr. Hughson, but did complain of diabetes and foot pain; his daughter echoed those sentiments and said that Gallegos is generally easy going, but gets irritable when his blood sugar gets high. (*Id.*) Gallegos denied any history of depression or anxiety. Dr. Hughson diagnosed Gallegos with a somatoform disorder, borderline intellectual functioning, difficulty coping with poorly controlled

diabetes, fatigue, neuropathy, and an inability to work. (*Id.*) Dr. Hughson assessed Gallegos with a GAF of 48 and opined that Gallegos experiences marked limitations with detailed or complex instructions and the ability to carry out instructions; moderate-to-marked limitations attending and concentrating and working without supervision; moderate limitations with very short and simple instructions; mild limitations interacting with the public, adapting to changes in the workplace, using public transportation, interacting with coworkers and supervisors, and being aware of and reacting appropriately to normal hazards. (*Id.*) The ALJ noted that Dr. Hughson came to this conclusion based on Gallegos's avoidance "of the kind of frequent medical care he would need in order to stabilize his diabetes, and the reports of his daughter that he could not work due to the serious daily symptoms with his diabetes and neuropathy." (*Id.*)

The ALJ afforded "little weight to the opinion of Dr. Hughson, as the evidence does not support the degree of limitations she assessed. [Dr. Hughson] appears to have relied heavily on the claims of [Gallegos] and his daughter, as [Dr. Hughson] indicated the only source of information available to her was the report of Dr. LaCourt." (*Id.*) The ALJ gave "some weight to the opinion of Dr. LaCourt" and "some weight" to the opinion of state agency medical consultants, including Dr. Chiang. (AR 40.)

The ALJ then concluded that Gallegos was prevented from performing his past relevant work. (*Id.*) Based on the testimony of the vocational expert at the hearing, the ALJ concluded that Gallegos could work as a food and beverage order clerk, a call out clerk, or a table worker. (AR 41.) Because Gallegos could transition to other work, the ALJ determined that Gallegos was not disabled. (AR 42.)

## DISCUSSION

Gallegos argues that the ALJ erred at step four by improperly rejecting Dr. Hughson's opinion, and at step five by failing to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles and by improperly relying on the vocational expert's statement of the number of jobs available in the national economy. Because I agree that the ALJ improperly rejected Dr. Hughson's opinion, I do not reach Gallegos's claims of error at step five.

The factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) apply in determining the weight to be accorded to non-treating physicians. These factors include: 1) the nature and extent of the treatment relationship, 2) the degree to which the opinion is supported by other evidence of record, 3) consistency between the opinion and the record as a whole, 4) whether the physician is a specialist in the area upon which an opinion is rendered, and 5) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Gallegos contends that the ALJ effectively rejected Dr. Hughson's opinion by according it little weight. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (equating "according little weight to" with "effectively rejecting" an examining medical-source opinion). I agree.

While the ALJ tacitly addressed that Dr. Hughson was an examining, but not a treating, physician and that she reviewed Dr. LaCourt's opinion, but not other evidence of record, he did not sufficiently address the remaining factors. The ALJ stated that the evidence of record does not support the degree of limitations that Dr. Hughson assessed, but did not connect that statement to any evidence of record. It appears that the ALJ discounted Gallegos's reports, upon which Dr. Hughson necessarily relied, based on Gallegos's history of misleading statements with

respect to his driving record and the ALJ's determination that Gallegos was not entirely credible. This determination could come under the umbrella of the fifth factor – other information brought to the ALJ's attention.

"[A] psychological opinion may rest either on observed signs and symptoms or on psychological tests." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). Here, Dr. Hughson did not perform any psychological tests. Neither Gallegos nor his daughter reported any emotional or behavioral problems. Accordingly, Dr. Hughson's conclusions appear to be based on her observations and on her review of Dr. LaCourt's objective testing. The fact that the ALJ found Gallegos to be less than entirely credible does not undermine Dr. Hughson's observations based on things other than Gallegos's reports. Again, Gallegos did not report emotional or behavioral problems to Dr. Hughson: the only available information for her conclusions came from the objective testing and report from Dr. LaCourt and her own observations. Without additional discussion or analysis from the ALJ, I am left without sufficient information to determine whether he appropriately evaluated Dr. Hughson's opinion.

The ALJ noted that Dr. Hughson's opinion was contradicted by other evidence in the record. However, the ALJ gave only "some" weight to the opinions of Drs. Chiang and LaCourt, leaving the source of the ALJ's mental RFC evaluation somewhat unknown.

On remand, the ALJ will apply the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) when evaluating Dr. Hughson's opinion and crafting his mental RFC.

## CONCLUSION

As explained above, the ALJ failed to apply the relevant factors in evaluating and discounting Dr. Hughson's opinion, which constitutes reversible error. On remand, the ALJ will

apply the factors outlined above. The motion is granted and the case is remanded to the SSA for further proceedings.

      It is so ordered.

                                                                              _____
                                                                              William P. Lynch
                                                                              United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.